UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE KISER,<br><br>          Petitioner,<br>v.<br><br>GONZALES, Warden, et al.,<br><br>          Respondents. | Civil No. 11-CV-1944 DMS (NLS)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Dkt. No. 4.) |

On August 19, 2011, Eugene Kiser ("Petitioner" or "Kiser"), a prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) After this petition was dismissed for failure to pay the filing fee and failure to name a proper respondent, he filed a first amended petition. (Dkt. No. 4.) Respondents filed a motion to dismiss the first amended petition on October 24, 2011, arguing that Petitioner had not exhausted his claim. (Dkt. No. 9.) On December 29, 2011, Petitioner filed a traverse. (Dkt. No. 11.) This was construed as a response to the motion to dismiss. (Dkt. No. 12 at 1.)[1]

On February 1, 2012, the undersigned issued a Report and Recommendation, recommending that Respondents' motion be denied because Petitioner's claim was technically exhausted. (Dkt. No. 12 at 5.) On May 21, 2012, the Hon. Dana M. Sabraw adopted the Report and Recommendation. (Dkt. No. 14.) Respondents thereafter filed an answer. (Dkt. No. 15.) Although the Court construed Petitioner's traverse as a response to Respondents' motion to dismiss, it will also be considered as the traverse to the

---

[1] Citations to page numbers refer to those assigned by the ECF system.

1    11-CV-1944 DMS (NLS)

answer.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background[2]

#### 1. The Prosecution's Case

On November 14, 2006, at approximately 10:00 p.m., Kiser was walking toward a bus stop when he passed the victim, Sabrina B. Sabrina, who was 13 years old, had attended a high school volleyball dinner earlier that evening and had then gone to visit a friend. Sabrina was walking to a trolley station to take a trolley home for the night when she encountered Kiser.

After passing Sabrina, Kiser turned around and began to follow her. Kiser said, "Hi." Sabrina did not respond and continued walking toward the trolley station. Kiser followed her to the station. When she arrived at the station, Sabrina sat down. Kiser sat next to her and struck up a conversation. They discussed Sabrina's volleyball trophy and a volleyball bag that she was carrying. Kiser asked Sabrina where she went to school. Sabrina told him she was a freshman at San Diego High School.

Sabrina felt uncomfortable so she got up and walked over to a railing. Kiser pulled out a Game Boy system and began to play it while still talking to Sabrina. Kiser asked her if she "was a good girl or a bad girl." The question made Sabrina uncomfortable and she did not answer.[3]

When the trolley arrived, both Sabrina and Kiser got on. Kiser sat across from Sabrina and continued talking to her. At some point, Kiser pulled out his cellular telephone and started to look through it. He then held the telephone out to Sabrina and showed her videos on the telephone. The videos depicted close-up shots of women performing oral sex on men, women engaging in sexual intercourse with men, and people performing other sexual acts. While Kiser was showing Sabrina the videos, he moved from the seat across from her to a seat next to her. When he sat next to her, his thigh was touching Sabrina's thigh. Kiser held the telephone approximately four inches from Sabrina's face so that she could not help but see the videos.

---

[2]This Court quotes verbatim the factual background of the California Court of Appeal's opinion. (Lodgment 4 at 2-5.) *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"); *Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (deference is owed to factual findings of state trial and appellate courts).

[3][Footnote in original] Sabrina also testified, "I knew he was asking me sexually if I was a good girl or a bad girl."

Kiser asked Sabrina if she "liked" the videos, and she responded, "No." Kiser ultimately showed Sabrina approximately eight videos - four pornographic videos, three videos of Kiser with one of his cars, and one video of Kiser inside his house. He showed her at least two of the pornographic videos more than once.

Sabrina was not sure at what point she told Kiser that she was 13 years old, although she thought that it was either before he began showing her the videos, or toward the end of the time during which he was showing her the videos. Kiser told her that 13 year olds "don't come in [her] size," apparently because Sabrina was 5'11" tall at the time. Kiser also told her that he thought that she was 17 or 18 years old. Kiser continued to sit next to Sabrina showing her videos until the trolley reached Sabrina's stop. Sabrina did not tell anyone on the trolley what was happening because she was afraid of Kiser and was "worried about what he might do to [her]."

Kiser followed Sabrina when she got off the trolley. As Sabrina walked away, Kiser said, "[Y]ou don't have to be all shy." Kiser remained at the station and did not follow Sabrina home.

At approximately 10:45 p.m., two police officers detained Kiser at the trolley station where Sabrina and Kiser had gotten off the trolley. Sabrina identified Kiser as the person who had shown her the pornographic videos. After a police officer read Kiser his *Miranda*[4] rights, Kiser said he thought Sabrina was 17 years old.

### 2. The Defense

Kiser testified in his own defense. Kiser said that he had seen Sabrina on the bus talking with a man who Kiser believed was a drug dealer. Kiser acknowledged that he had asked Sabrina whether she was a "good girl or bad girl," but said that he asked her that because she had been talking with "bad company" on the bus. According to Kiser, he was scrolling through pictures on his cellular telephone to find photographs of his car when the pornographic images came up on the screen. He said that after Sabrina told him her age, he did not show her any videos, and that they rode together on the trolley for another 10 minutes. Kiser admitted that he told the police officer at the time that he believed Sabrina was 17 years old.

///

---

[4][Footnote in original] *Miranda v. Arizona*, (1996) 384 U.S. 436.

### B. Procedural History

On December 4, 2006, the San Diego County District Attorney filed an information charging Kiser with showing harmful matter to a minor with the intent of seducing the minor, in violation of Pen. Code,[5] § 288.2, subd. (a). (Lodgment 7 at 1-4.) The information also alleged that Kiser had two prior prison convictions (§§ 667.5, subd. (b), 668) and one strike conviction (§§ 667, subds. (b)-(i), 1170.12 and 668.) *Id.* Kiser was found guilty at a trial by jury on February 27, 2008. *Id.* at 181. Kiser admitted the prior conviction allegations and the strike prior allegation. (Lodgment 10, vol. 3, at 250-52.) On December 19, 2008, the trial court sentenced Kiser to a total of eight years in prison, which included the upper term of three years, doubled, as a result of his prior strike conviction, plus an additional year for each of the two prison prior convictions. (Lodgment 10, vol. 6, at 506-07.)

Petitioner personally filed a notice of appeal on January 8, 2009, and appointed counsel filed a second notice of appeal one week later. (Lodgment 7 at 124 and 127.) On appeal, Petitioner claimed: (1) insufficient evidence was presented at trial to prove his intent to have sexual contact with the victim; and (2) the trial court erred when it made improper dual use of his priors for sentencing purposes. (Lodgment 1 at 11, 19-21.) The appellate court affirmed the judgment. (Lodgment 4.) Petitioner filed a Petition for Review on April 14, 2010, solely asserting that insufficient evidence supported his conviction. (Lodgment 5 at 12-19.) The California Supreme Court denied the Petition for Review without comment on May 20, 2010. (Lodgment 6.)

## II. PETITIONER'S CLAIM

Petitioner alleges that his Sixth Amendment right to a jury trial was violated when the trial judge imposed an upper term sentence using facts not found by a jury. (Dkt. No. 4 at 6.)

## III. DISCUSSION

For the following reasons, the Court finds that Petitioner's claim is procedurally defaulted, and without merit. Accordingly, the Court **RECOMMENDS** the Petition be **DENIED.**

### A. Procedural Default

Respondents contend that Petitioner did not present his federal claim to the California state courts, and that his claim would now be time-barred. (Dkt. No. 15-1 at 12.) As a result, Respondents

---

[5] Further statutory references in this paragraph are to the Penal Code unless otherwise indicated.

assert that Petitioner's claim is procedurally defaulted. *Id.*

A claim for federal habeas relief cannot be granted unless the prisoner first properly exhausts his or her remedies in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 848 (1999); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]"). "A petitioner has satisfied the exhaustion requirement if: (1) he has fairly presented his federal claim to the highest state court with jurisdiction to consider it... or (2) he demonstrates that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996)(citations and quotations omitted). "A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).[6]

A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *as modified by* 247 F.3d 904 (9th Cir. 2001). In this circuit, a petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal constitution or statutes, or citing to federal case law. *See Lyons*, 232 F.3d at 668, 670.

In his brief to the California Court of Appeal, Petitioner raised two issues: (1) the evidence at trial was insufficient to support his conviction, and (2) the trial court improperly used prior prison

---

[6]There is a distinction between "proper" exhaustion and "technical" exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer available to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). As noted above, proper exhaustion requires fair presentation of the claim to the highest available state court. *Johnson*, 88 F.3d at 829. A federal court may only reach the merits of a properly exhausted claim. *See Woodford*, 541 U.S. at 92 ("To protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies.") (citations and quotations omitted). In ruling on Respondents' motion to dismiss in this action, the Court found that Petitioner's claim had not been presented to the California Supreme Court. (Dkt. Nos. 12 and 14.) Due to the amount of time that had passed since his conviction, it was unlikely that Petitioner would be able to return to state court to properly exhaust his claim. (Dkt. No. 12 at 3-5.) As a result, this Court concluded that Petitioner technically exhausted his claim because he no longer had state remedies available. *Id.*

convictions twice to impose both an upper term sentence and two one-year enhancements. (Lodgment 1 at 11, 19-21.) It is the latter argument that is relevant to the pending action.

Although the crux of Petitioner's argument to the California Court of Appeal is that the trial court violated Cal. Pen. Code § 1170(b) by relying on the same enhancing factors more than once, Petitioner did include a discussion of *Cunningham v. California*, 549 U.S. 270 (2007). (Lodgment 1 at 20-21.) *Cunningham* addressed the trial court's ability to impose an upper term sentence under California's Determinate Sentencing Law ("DSL"), a holding that directly relates to Petitioner's federal claim. The California Court of Appeal also discussed *Cunningham* and the resulting effect on California's DSL in its opinion, and centered its analysis of Petitioner's sentence almost exclusively on whether the trial court properly imposed an upper term. (Lodgment 4 at 9-12.) Although the claim presented to the California Court of Appeal was not phrased exactly the same as presented here, it is fair to say that Petitioner challenged the imposition of an upper term sentence by the trial judge, and that this challenge was addressed by a state court.

Presenting the claim to the California Court of Appeal, however, is not enough. Petitioner must fully exhaust his habeas claim by fairly presenting it to the highest state court with jurisdiction to consider it. *Johnson,* 88 F.3d at 829. Petitioner filed a Petition for Review to the California Supreme Court, but he only presented his insufficient evidence claim and not his improper sentencing claim. (Lodgment 5.)[7] Therefore, his federal claim was not presented to the highest state court with jurisdiction to hear it.

Petitioner's Petition for Review to the California Supreme Court was denied on May 20, 2010. (Lodgment 6.) His conviction became final on August 18, 2010, which was the date his right to seek relief from the United States Supreme Court expired. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

A California prisoner must seek state habeas relief without substantial delay, as "measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." *Walker v. Martin*, 131 S.Ct. 1120, 1125 (2011),

---

[7]Petitioner states in his first amended petition that he raised the pending claim to the California Supreme Court. (Dkt. No. 4 at 2.) However, there is no mention of this claim in the Petition for Review. (Lodgment 5.)

quoting *In re Robbins*, 18 Cal. 4th 770, 787 (1998). More than two years have passed since Petitioner's conviction became final, and it is extremely unlikely that Petitioner would be permitted to return to state court to fully exhaust his claim at this point. *See Evans v. Chavis*, 546 U.S. 189, 201 (2006) ("no authority suggesting...that California would consider an unjustified or unexplained 6 month filing delay reasonable"); *Culver v. Director of Corr.*, 450 F. Supp.2d 1137, 1140-41 (C.D. Cal. 2006) (finding unexplained and unjustified delays of 71 and 97 days unreasonable under California law).

As a result of Petitioner's failure to present his allegations to the state court, his Sixth Amendment claim is procedurally defaulted in this Court. *See Coleman*, 501 U.S. at 735 n.1 (a procedural default arises when "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *see id.* at 729-30 (a procedural default arises from a violation of a state procedural rule which is independent of federal law, and which is clearly established and consistently applied); *see Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003) (court concluded that "because the California untimeliness rule is not interwoven with federal law, it is an independent state procedural ground"); *see also Walker*, 131 S.Ct. at 1125-31 (holding that California's timeliness requirement providing that a prisoner must seek habeas relief without "substantial delay" is clearly established and consistently applied).[8]

This Court may still reach the merits of the claim if Petitioner can demonstrate cause for his failure to timely present his claim to the state courts and actual prejudice stemming from the alleged violation of federal law, or if he can demonstrate that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim. *Coleman*, 501 U.S. at 750.

### 1. Cause and prejudice

The cause prong can be satisfied if Petitioner demonstrates some "objective factor" outside of his

---

[8]Although *Walker* found California's timeliness rule to be clearly established and consistently applied, the *Walker* Court noted that a petitioner might be able to show the rule to be inadequate in his or her own case by showing that "the California Supreme Court exercised its discretion in a surprising or unfair manner." *Walker*, 131 S.Ct. at 1130 ("A state ground, no doubt, may be found inadequate when discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law.") (citation and internal quotation marks omitted); *see also Lee v. Kemna*, 534 U.S. 362, 376 (recognizing exceptions where "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question.") There is nothing in the record to suggest that an application of the California timeliness rule in this case would be unexpected or unfair. *Walker*, 131 S.Ct. at 1130.

control that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel. *Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir. 2011); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). In order to establish prejudice to overcome a procedural default, Petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See United States v. Frady*, 456 U.S. 152, 170 (1982) (discussing prejudice where defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255); *Cooper*, 641 F.3d at 327.

Petitioner has identified no basis for cause or prejudice, and none is apparent in the record. Therefore, this Court finds that Petitioner has not established cause and prejudice to excuse his procedural default.

### 2. Fundamental miscarriage of justice

Petitioner can also avoid a procedural default if he can demonstrate that a fundamental miscarriage of justice would result from a failure to consider his claims. *Coleman*, 501 U.S. at 750. The United States Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "In order to pass through *Schlup*'s gateway, and have an otherwise barred constitutional claim heard on the merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting *Schlup*, 513 U.S. at 327. In applying this standard, "the petitioner is required to present 'evidence of innocence' such that 'a court cannot have confidence in the outcome of the trial.'" *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997), quoting *Schlup*, 513 U.S. at 316.

Petitioner is not challenging his conviction in this habeas action; he is challenging the sentence imposed by the state court. There is nothing before this Court that would indicate that there has been a constitutional violation resulting in the conviction of one who is actually innocent. Indeed, Petitioner has not made this argument. Additionally, as discussed in the merits section below, the trial court acted

within its discretion when it imposed the upper term sentence. Therefore, the fundamental miscarriage of justice exception is inapplicable.

### 3. Conclusion

Petitioner's claim is procedurally defaulted due to his failure to present it to the state courts, and the fact that it would now be barred by California's timeliness rule. Petitioner has not attempted and is unable to establish cause, prejudice, or the existence of a fundamental miscarriage of justice necessary to excuse the default. Thus, the Court **RECOMMENDS** the first amended petition be **DENIED** on the basis that the sole claim presented is procedurally defaulted.

## B. Merits

Respondents alternatively argue that the first amended petition is without merit. (Dkt. No. 15-1 at 14-19.) For the following reasons, this Court agrees. Generally, procedural default bars a federal court from reaching the merits of a claim. *Cooper,* 641 F.3d at 327 ("a federal court may not hear a habeas claim if it runs afoul of the procedural bar doctrine"). However, in the interest of judicial economy, this Court will consider and deny the claim on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

### 1. Standard of review

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court may not grant habeas relief to a state prisoner with respect to any claim which has been adjudicated on the merits in the state court, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d). Prior to the enactment of AEDPA, habeas petitions were reviewed under a *de novo* standard. *Gratzer v. Mahoney*, 397 F.3d 686, 690 (9th Cir. 2005). Under pre-AEDPA habeas review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) quoting *McKenzie v.*

*McCormick*, 27 F.3d 1415, 1418 (9th Cir. 1994).

As discussed above, Petitioner's claim was not properly exhausted. Generally, an unexhausted claim receives a *de novo* review, as there is usually no state court decision to accord deference to under AEDPA. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002) (in situations where a federal habeas court addresses a claim which has not been adjudicated on the merits, *de novo* review is required). In this case, however, there is a decision from the California Court of Appeal that may be entitled to AEDPA deference, even though the claim is not fully exhausted. The language of AEDPA indicates that it applies "with respect to any claim that was adjudicated on the merits in State court proceedings" and makes no reference as to what level of state court proceedings is required. 28 U.S.C. § 2254(d). However, the law in this circuit is clear that a claim must be presented to the highest state court. *Johnson*, 88 F.3d at 829. Therefore, this Court conservatively elects to review the claim under the *de novo* standard, because a failure to survive *de novo* review is also fatal to a claim under AEDPA's deferential standard. *See Berghuis v. Thompkins*, 130 S.Ct. 2250, 2265 (2010) ("Courts can...deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review"); *see also Edwards v. Harrington*, 2011 WL 4434539 at *10 (C.D. Cal. July 20, 2011) *adopted by* 2011 WL 4434538 (Sept. 21, 2011). This Court still must consider the reasoning of the state court where it is relevant to the constitutional issue, even under a *de novo* review. *Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008).

### 2. State Court Adjudication

In its discussion of Petitioner's upper term sentence, the appellate court stated:

> Kiser contends that the trial court erred in imposing the upper term by relying on improper aggravating factors to support that decision. Specifically, Kiser argues that the court improperly used his prior convictions both as the basis for two additional one-year enhancement terms, and also to support the court's decision to impose an upper term sentence. He further contends that the one remaining aggravating factor not related to his prior convictions was not found true by a jury, and that the trial court therefore could not properly rely on that factor to impose an upper term.
>
> The court explained its reasons for imposing the upper term as follows:
>
> > I do think the upper term is appropriate in this case and that's in part because of his priors. He has numerous priors. He was on parole when the crime was committed. His prior performance when he was on parole and probation was unsatisfactory and the planning that went into this. He clearly had the videos,

was looking for someone and I think given that the upper term is appropriate.

Kiser contends that the trial court "used" his prior convictions to impose an upper term and also to impose two one-year prison prior enhancements, in violation of the prohibition against dual use of enhancements in section 1170, subdivision (b). Section 1170, subdivision (b) provides, "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."

Kiser appears to acknowledge that the trial court mentioned additional factors, beyond the mere fact of his prior prison convictions, in support of its decision to impose the upper term. He argues, however, that with the exception of the element of "planning," all of the factors that the court mentioned (i.e., his "numerous priors," the fact that he was "on parole when the crime was committed," and the fact that his performance on probation and parole was unsatisfactory) are essentially aspects of the "fact" of his prison priors. Kiser further contends that the court could not properly rely on the one remaining factor - the "planning" factor - to support the upper term under *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*), because a jury did not find that factor true. We reject Kiser's argument.

Even if we assume that the trial court's reference to Kiser's "numerous priors" as a factor supporting imposition of the upper term related solely to Kiser's prior prison convictions and was thus improper, this would not necessarily require resentencing. "'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' [Citation.]" (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.) This is because "a single valid factor in aggravation is sufficient to justify an upper term." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1759.) Here, the trial court identified at least three additional factors to support the imposition of an upper term sentence beyond Kiser's prior prison convictions.

First, although Kiser argues otherwise, the fact that Kiser was on parole at the time of the current offense and that he performed unsatisfactorily on probation and/or parole are not aggravating factors that are subsumed under Kiser's prior prison convictions. "Parole status and performance on parole are distinct aggravating factors. Each is distinct from the aggravating factors of having numerous prior convictions and having served prior prison terms. [Citation.]" (*People v. Yim* (2007) 152 Cal.App.4th 366, 369; see also *People v. Whitten* (1994) 22 Cal.App.4th 1761, 1767 ["It is well settled that it is not a dual use of facts to consider one's performance on parole notwithstanding consideration of the underlying conviction as an enhancement. [Citation.]"].)

The trial court also cited the fact that Kiser's offense indicated a certain level of planning as a factor in aggravation in deciding to impose the upper term. Kiser contends that use of this factor violates *Cunningham* because that factor was not found true by a jury. In making this argument, Kiser misapprehends the current state of California sentencing law. Before Kiser was sentenced, the legislature amended the Determinate Sentencing Law (DSL) in response to *Cunningham*, setting the upper term as the statutory maximum. (*People v. Sandoval* (2007) 41 Cal.4th 825, 843-845.) This amendment permits courts to exercise discretion when selecting among the lower, middle, and upper terms. (*Ibid.*) The Supreme Court has held that "it is constitutionally appropriate to apply the amended version of the DSL in all sentencing proceedings conducted after the effective date of the amendments, regardless of whether the offense was committed prior to the effective date of the amendments." (*People v. Jones* (2009) 178 Cal.App.4th 853, 866-867.) It is thus clear that the trial court acted within its discretion in relying on the fact that Kiser's offense indicated planning in imposing the upper term, despite the fact that the jury did not make any finding with respect to that factor.

> The trial court relied on at least three aggravating factors, beyond the fact that Kiser had "numerous priors," in imposing the upper term. Under these circumstances, we conclude that it is not reasonably probable that the trial court would have imposed a lesser term if it had known that one of the factors it relied upon was improper. Thus, any error arising from dual use of Kiser's prison priors was harmless, and resentencing is not required.

(Lodgment 4 at 9-12.)

### 3.  Applicable Federal Law

Petitioner's claim stems from a distinguished line of Supreme Court cases that begins with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), continues on with *Blakely v. Washington*, 542 U.S. 296 (2004), and concludes with *Cunningham v. California*, 549 U.S. 270 (2007). In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the Court identified the statutory maximum under *Apprendi* to be the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted).

The Supreme Court applied *Apprendi* and *Blakely* to California's DSL in *Cunningham*. According to the version of the DSL in effect at the time, a trial judge was directed to order a defendant sentenced to a middle term of imprisonment, "unless there are circumstances in aggravation or mitigation of the crime." 549 U.S. at 277 (internal quotations omitted). Finding that the middle term constituted the "statutory maximum" under *Apprendi* and *Blakely*, the Court found that the DSL improperly assigned the authority to find facts justifying an upper term sentence to the trial judge, and not a jury. *Id.* at 274, 288. This improper assignment "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." *Id.* at 274.

In response to *Cunningham*, the California Legislature amended the DSL ("amended DSL") to remove the presumption of the middle term and to allow a trial judge to use his or her discretion to impose a lower, middle, or upper term sentence. *Butler v. Curry*, 528 F.3d 624, 631 n. 5 (9th Cir. 2008); *People v. Wilson*, 164 Cal. App. 4th 988, 992 (2008). This amendment took effect on March 30, 2007. *Id.* Petitioner was sentenced on December 19, 2008. (Lodgment 7 at 191.) Therefore, the amended

///
///

DSL applies to his sentence.[9]

Under this sentencing scheme, the upper term is now the statutory maximum. *People v. Jones*, 178 Cal. App. 4th 853, 867 (2009). The Supreme Court has previously made clear that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *United States v. Booker*, 543 U.S. 220, 233 (2005). The imposition of the lower, middle, or upper term "is now discretionary and does not depend on the finding of any aggravating factors." *Butler*, 528 F.3d at 652 n. 20.; *see, e.g. Duncan v. Gonzales*, 2012 WL 1900663 at *5 (C.D. Cal. Mar. 27, 2012) *adopted by* 2012 WL 1900664 (May 24, 2012); *Lloyd v. Gonzalez*, 2012 WL 84046 at *3 (C.D. Cal. Jan. 10, 2012); and *Pierce v. Stainer*, 2011 WL 5104092 at *4 (E.D. Cal. Oct. 25, 2011).

### 4. Application

At sentencing, the trial judge relied on Petitioner's prior convictions, the fact that he was on parole at the time of the crime, his poor performance on parole and probation, and the planning that went into the crime, in order to impose the upper term sentence. (Lodgment 10, vol. 6, at 506.) The trial court was well within its discretion to rely on these issues in imposing the upper term sentence. The California Court of Appeal, upon reviewing Petitioner's appeal of his sentence, concluded that the trial court acted within its discretion, and that no jury finding was necessary. (Lodgment 4 at 11.) As set out above, the Supreme Court has stated quite plainly that a defendant has no right to a jury determination of the facts relied upon by a trial judge when exercising discretion to impose a sentence within a defined range. *Booker*, 543 U.S. at 233. Therefore, Petitioner cannot state a claim for habeas relief.

Even if Petitioner had been sentenced under the previous version of the DSL, his claim for habeas relief would still fail. The California Supreme Court has held that "imposition of the upper term

---

[9]Petitioner committed his crime on November 14, 2006. (Lodgment 7 at 2.) At that time, the version of the DSL that was ruled unconstitutional by *Cunningham* was in effect. An intervening change in the sentencing law raises no *ex post facto* concerns if its retroactive application does not work to an offender's disadvantage. *People v. Sandoval,* 41 Cal. 4th 825, 853 (2007). The removal of the requirement to impose the middle term if no aggravating or mitigating circumstances are present does not have the effect of increasing the sentence for any particular crime. *Id.* at 855. Petitioner's sentence under the amended DSL does not subject him to the disadvantage of an increased sentence. Therefore, he was properly sentenced under the amended DSL.

does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." *People v. Black*, 41 Cal. 4th 799, 816 (2007); *see also Butler*, 528 U.S. at 642-43. An aggravating fact of a prior conviction does not need to be submitted to a jury. *Sandoval*, 41 Cal. 4th at 836-837; *Apprendi*, 530 U.S. at 490 ("*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt") (emphasis added.) At Petitioner's sentencing, the trial judge clearly relied upon his prior convictions. (Lodgment 10, vol. 6, at 506.) Therefore, Petitioner's sentence would still survive, even if the DSL had not been amended. As a result, Petitioner is not entitled to habeas relief.

In his habeas petition, Petitioner did not specifically raise the claim that he made in his direct appeal, namely, that the trial court made improper dual use of his prior convictions to impose both the upper term and to add one-year enhancements to his sentence, in violation of Cal. Pen. Code § 1170(b). However, he does mention it in his traverse. (Dkt. No. 11 at 4.) A complaint that a state court misapplied state sentencing laws is not a cognizable federal habeas claim. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994)("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief."). Habeas relief is only warranted if a petitioner's conviction or sentence is in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011). If the trial court improperly relied on Petitioner's prior convictions more than once, in violation of Cal. Pen. Code § 1170(b), it is a misapplication of state sentencing laws, and not a sustainable claim for habeas relief. *See Pierce*, 2011 WL 5104092 at *5 ("petitioner's allegation that the trial court violated California's statutory prohibition on the dual use of facts does not present a federal question").

If this Court concluded that the trial court improperly imposed the upper term sentence in violation of *Apprendi*, *Blakely*, and *Cunningham*, such a violation would be subject to a harmless error review. *See Washington v. Recuenco*, 548 U.S. 212, 221-22 (2006) (sentencing errors are subject to

harmless error review). This Court must determine whether an error had a "substantial and injurious effect" on Petitioner's sentence. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).

Under a "harmless error" review, a federal court must grant relief if it is in "'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt." *Butler*, 528 F.3d at 648, quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). "Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id.* at 648, quoting *O'Neal*, 513 U.S. at 435.

According to the Ninth Circuit in *Butler*, "to determine whether an *Apprendi* error was harmless, [the Court] must examine the whole record, including the evidence presented by the government at sentencing." *Butler*, 528 F.3d at 651. The Court in *Butler* noted that it would have considered a probation report submitted to the trial judge in assessing whether there had been a harmless error:

> Having reviewed all the submissions to the district court in this case, we have not found a probation report or any other document that reflects [petitioner's] probationary status at the time of the crime. At oral argument, the government acknowledged that it did not submit the probation report read by the sentencing judge to the district court. We thus cannot be certain what evidence was presented to the state trial court on the question of [petitioner's] probationary status.

*Id.*

In this case, Petitioner's probation officer's report is part of the record. (Lodgment 7 at 99-111.)[10] It is evident from the probation report that Petitioner has had his parole revoked on several occasions, and that he was on parole when he committed the crime involved in this petition. *Id.* at 103-105. The report detailed the four circumstances in aggravation eventually relied on by the trial judge at sentencing: (1) the planning involved in the crime, (2) Petitioner's prior convictions, (3) the fact that Petitioner was on parole when the crime was committed, and (4) Petitioner's unsatisfactory prior performance on parole and probation.[11] *Id.* at 108.

There is information in the record to establish that Petitioner was on parole at the time of the crime, and that his prior performance on parole was unsatisfactory. This Court is confident that, had the

---

[10] There appears to be a page missing from the report, between pages 101 and 102.

[11] These aggravating circumstances are listed in California Rules of Court 4.421(a)(8), 4.421(b)(2), 4.421(b)(4), and 4.421(b)(5), respectively.

jury been presented with these facts, it would have found at least one of these aggravating factors beyond a reasonable doubt.  As noted above, only one legally sufficient aggravating factor is necessary to uphold an upper term sentence.  *Black*, 41 Cal. 4th at 816.  As such, this Court need not address whether the jury would have found that Petitioner planned his crime.

Although this Court does not find that there was any error in imposing the upper term sentence, if there was an error committed, it was harmless.  Therefore, Petitioner is not entitled to habeas relief.

### 5. Conclusion

To the extent the Court can reach the merits of Petitioner's procedurally defaulted claim, the Court **RECOMMENDS** habeas relief be **DENIED**.

### IV. CONCLUSION AND RECOMMENDATION

Petitioner has not demonstrated that he is entitled to federal habeas relief.  **ACCORDINGLY**, it is hereby

**RECOMMENDED** that Petitioner's first amended petition for a writ of habeas corpus (Dkt. No. 4) be **DENIED**.

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **November 1, 2012**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 15, 2012.**  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: October 11, 2012

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court